Armand A. DUFRESNE, Jr. et al.

v.

BOARD OF TRUSTEES OF the MAINE STATE RETIREMENT SYSTEM.

Supreme Judicial Court of Maine.

Argued Nov. 17, 1980.

Decided April 15, 1981.

Berman, Berman & Simmons, P. A., Gary Goldberg (orally), Lewiston, for plaintiffs.

Paul F. Macri (orally), Asst. Atty. Gen., Richard S. Cohen, Atty. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and GOD-FREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

PER CURIAM.

From a stipulation agreed to by the parties, the following facts are to be taken as established:

Plaintiffs are one active retired justice of the Supreme Judicial Court and three active retired judges of the District Court.[1] In February, 1979, they appeared before the board of trustees of the state retirement system to ask the board to amend its regulations to permit active retired judges to participate in the group life insurance program under 5 M.R.S.A. § 1151 (1979 & Supp. 1980–81) in the same manner as. if they were fully active judges who had not retired. After hearing the judges' arguments, the board passed unanimously the following resolution:

> "That the Board's rules and regulations be amended to grant active retired justices and judges continued life insurance coverages at the same level as when active, contingent upon approval by the Attorney General's Office of the statute interpretation, and that the active retired justices and judges pay the premiums for said coverage."

The resolution thus adopted did not specify the rate at which active retired judges would have to pay "premiums" as a condition to thus "continuing" their life insurance coverages.[2] The stipulation of facts is silent on whether the parties intended the active retired judges' "premiums" to be computed at the regular group rate applicable to eligible active non-retired employees and judges or at the higher, age-graded rates that the board must pay for the coverage of retirees.[3] From the very fact that

---

1. Generally in this opinion the term "judges" will be used to refer to justices of the Supreme Judicial and Superior Courts as well as to judges of the District Court.

2. Technically speaking, the premium for group coverage under 5 M.R.S.A. § 1151 is paid to the insurer (Union Mutual Life Insurance Company) by the board of trustees acting for the state. The amounts paid by employees to the state treasurer through payroll deductions are not "premiums", though they contribute to the amount ultimately paid as a premium.

     Section 1151 affords to eligible employees both "basic" and "additional" (or "supplemental") life insurance coverage. Pursuant to subsection 9(A) of section 1151 (see n. 9 infra ), the "basic" coverage of each judge who was insured in the group plan before retirement is continued in force without cost to the judge after retirement. However, the basic insurance in force must be reduced to 25 percent at age 70.

     The "supplemental" coverage of the plaintiffs in this case was terminated at retirement. Even if the regulations were to be amended as plaintiffs request, supplemental coverage would be made available to each plaintiff for the first time since his retirement.

3. The record does not include the underlying policies of insurance between the board of trustees and Union Mutual Life Insurance Company, underwriter of the group life program in question. We infer from the governing legislation and from the annual reports of the Maine State Retirement System that the board pays one premium annually for life insurance of all eligible active employees, obtaining the amount of that premium from the state treasurer who, in turn, has accrued an equal amount from insured employees by means of payroll deductions. With respect to coverage of retirees

the plaintiffs seek coverage on the same terms as active non-retired judges, it seems realistic to assume, and we do assume in reaching our decision, that the condition the board had in mind in adopting the resolution quoted above was that active retired judges would pay premiums at the same rate as fully active, non-retired judges as a condition to obtaining both basic and supplemental insurance coverages at the same level as fully active, non-retired judges.

On May 7, 1979, the attorney general's office issued an opinion to the effect that under existing statutes the board does not have the authority to amend its regulations in the manner proposed in the board resolution of February 28. The opinion said, in sum, that active retired judges, though in active service, are nevertheless retired, and that the existing statutory provisions relating to the effect of retirement on the rights of judges to obtain insurance benefits are still applicable to active retired judges.

On June 13, 1979, the board of trustees formally voted to deny the plaintiffs' request to amend the regulations, giving as its reason the attorney general's opinion that the board lacked authority to do so. The record does not indicate whether the board gave any consideration to the financial impact on the Group Life Insurance Fund of treating active retired justices and judges as if they were active non-retired judges for the purpose of group life coverage.[4]

The plaintiffs then brought a complaint in Superior Court, Androscoggin County, seeking judicial review of the board's decision. The Superior Court denied relief, and plaintiffs appeal. We affirm the judgment of the Superior Court.

Under the Administrative Procedure Act, 5 M.R.S.A., ch. 375, subch. 7 (1979), the Superior Court had jurisdiction to review the board's decision as "final agency action" within the meaning of section 11002 of the act on a complaint alleging facts sufficient to state a claim that the board's determination was an administrative decision "affected by error of law." See 5 M.R.S.A. § 11007(4)(C)(4) (1979).

The plaintiffs correctly assume that they are not entitled under existing regulations of the board to the benefits they seek. The board's formal regulations relating to group life insurance, adopted and filed pursuant to 5 M.R.S.A. ch. 375, subch. 2, contain little that is pertinent to the present controversy. See Maine State Retirement System, Regulations ch. 601 (1980). However, regulation 3(A), pertaining to eligibility, in chapter 601 of those regulations, does require, as an overall condition of eligibility for group life insurance, that "employment" be for at least 20 hours or two and one-half normal working days per week during the employment year, and the regulation does explicitly include judges in that overall requirement.[5] It may well be that an active retired judge is an "employee" within the meaning of the regulation when he per-

---

(presumably under a separate policy or policies), the board pays the cost of their insurance, not at the flat rate applicable to eligible active, non-retired employees, but at rates graded according to the retirees' ages. Because of the relatively advanced age of retired insureds, the premium charges for their insurance are higher than the group rate. In fiscal year 1979–80, the premiums paid by the board for coverage of retired insureds amounted to $695,520. See Maine State Retirement System, Report for the Fiscal Year Ended June 30, 1980, 11–12, 105–06. Roughly half the funds for payment of such premiums comes from a reserve for retiree premiums and the rest from an earmarked appropriation from the general fund. The income the board allocates to the reserve for retiree premiums is derived mainly from

dividends paid by Union Mutual on the group life insurance of non-retired employees and from earnings credited to the board from the state treasurer's "Cash Pool". Id.

4. Subsection 7 of 5 M.R.S.A. § 1151 (Supp. 1980–81) establishes the Group Life Insurance Fund and provides guidelines for its administration by the board of trustees of the state retirement system.

5. The board's eligibility regulation did not always include judges in the requirement of 20 hours or 2½ working days per week. See, e. g., Maine State Retirement System, Explanation of State Group Life Insurance 2 (a booklet for employees, 1976).

forms assigned judicial duties.[6] Nevertheless, in the absence of some statute, rule or regulation, court order or settled practice that active retired judges must work 20 hours or two and one-half days per week, section 3(A) of chapter 610 of the board regulations would have to be amended to exempt active retired judges from the generally applicable minimum work time as a condition of eligibility.

Although plaintiffs' original request to the board took the form of asking the board to change its regulations, the true gravamen of their complaint is that the board has been erroneously applying to them the statutory provisions limiting the insurance rights of retirees rather than the provisions that make available to fully active, non-retired judges the basic and supplemental coverages under the group insurance program. The position of the plaintiffs is that they are entitled as a matter of right, because of certain language in the group life insurance statutes, to require the board to treat them in the same manner as fully active, non-retired judges. The attorney general, representing the board in this litigation, contends that the board lacks authority to do so.

The group life insurance program for state employees, teachers, judges and participating district employees is governed by 5 M.R.S.A. ch. 101, subch. 6 (§§ 1151–1153) (1979 & Supp. 1980–81).[7] Subsection 2(A) of section 1151 affords "basic" and "additional", or "supplemental", life insurance coverage to eligible state employees, teachers and judges.[8] Under the basic coverage each judge may be insured for an amount of group life insurance approximately his annual compensation, up to a ceiling of $25,000. Subsection 9(A) of section 1151 provides, however, that on retirement of a participating judge his *basic* insurance is continued at no cost to the judge, but, by the terms of the statute, the amount in force is reduced to an amount equal to his average basic coverage during the three

---

6. An active retired judge is entitled to per diem compensation for such work as long as his per diem and retirement pension together do not exceed the annual salary of a full time, non-retired judge of the same court in any one calendar year. 4 M.R.S.A. §§ 6–B, 104–A, 157–B (1980–81 Supp.).

7. The group life insurance program is an element of the state retirement system established by chapter 101 of title 5 and is thus administered by the board of trustees of that system. Although members of the judiciary are excluded from membership in the system, *see* 5 M.R.S.A. § 1001(10), (12) (1979), "Justices of the Supreme Judicial Court and the Superior Court and Judges of the District Court" are expressly entitled, by subsection 1 of 5 M.R.S.A. § 1151, to participate in the state group life insurance program.

8. Subsections 1 and 2(A) of section 1151 provide, in pertinent part, as follows:

Group life insurance shall be made available to state employees and teachers, and Justices of the Supreme Judicial Court and the Superior Court and Judges of the District Court and the Administrative Court, subject to the following provisions:

1. *Eligibility.* Except as provided herein . . . Justices of the Supreme Judicial Court and the Superior Court and Judges of the District Court and the Administrative Court, shall at such time and under the conditions of eligibility as the board of trustees may by regulation prescribe, come within the purview of this section . . . .

2. *Amount.*

A. Each eligible state employee or teacher or Justice of the Supreme Judicial Court or Justice of the Superior Court or Judge of the District Court or Judge of the Administrative Court to whom this section applies shall be eligible *to be insured for an amount of group* life insurance approximating his annual compensation and an equal amount of group accidental death and dismemberment insurance in accordance with the following schedule. The Board of Trustees may permit eligible state employees or teachers or Justices of the Supreme Judicial Court or Justices of the Superior Court or Judges of the District Court or Judges of the Administrative Court to purchase up to double the amounts shown in Table A; provided that any additional life insurance coverage authorized *shall be in force only during the active service* of the state employee or teacher or Justices of the Supreme Judicial Court or Justices of the Superior Court or Judges of the District Court or Judges of the Administrative Court and *upon retirement* the maximum coverage shall be in accordance with Table A and subject to sub-section 9, paragraph A. The board of trustees shall by regulation prescribe the conditions of eligibility for this additional insurance. [Emphasis supplied]

years immediately preceding his retirement. When the retired judge reaches age 70, the amount of basic coverage in force is further reduced to 25 percent of the three-year average. 5 M.R.S.A. § 1151(9)(A).[9]

The *supplemental* insurance provided for by subsection 2(A) is available to an eligible insured during his "active service". Such an insured may purchase, at his own expense, supplemental coverage in an amount equal to the amount of his basic coverage, but any coverage so purchased remains in force only until the insured's retirement.

Section 1151 thus creates two different levels of life insurance coverage for judges, depending on whether or not they are retired. Judges who have not retired may obtain both full basic coverage and full supplemental coverage. In the practical application of subsections 2(A) and 9(A), a judge on retirement continues his basic coverage until age 70 (when it drops to 25 percent), but he also loses entirely any supplemental coverage he may have had.

Section 1151 does not expressly mention active retired members of the judiciary.

Active retired judges must, of course, be eligible for either one level of coverage or the other, but their very title gives rise to the present controversy over the meaning of section 1151: They are in retirement; yet, under subsequent commissions issued after appointment and confirmation in accordance with the Maine Constitution, they are also, for important purposes, in active service.[10]

Plaintiffs contend that, having been appointed "active retired judges", they should no longer be regarded as in a retirement status for the purpose of entitlement to group life insurance benefits. They point to the language in 5 M.R.S.A. § 1151(2)(A) (quoted *supra* n. 8), that "any additional ... insurance coverage ... shall be in force only during the active service" of the judge as showing a legislative intent to treat active retired judges as if they were not retired for the purpose of applying section 1151.

Coverage under the state group life insurance program, which was itself created

---

**9.** 5 M.R.S.A. § 1151(9) (1979 & Supp. 1980–81) contains the following pertinent provisions:

> Each policy purchased under sections 1151 to 1153 shall contain a provision to the effect that any insurance thereunder on any employee shall cease upon his separation from the service subject to [provisions not here pertinent], except that if upon such date as the insurance would otherwise cease, the employee retires in accordance with this chapter, his life insurance only shall be continued without cost to him and in the amounts provided in paragraphs A and B:
> A. On retirement for reasons other than occupational disability, the average amount of insurance in force for the last 3 years prior to retirement shall be continued in force at no cost to the state employer [*sic*] or teacher, provided that he has participated in the group life insurance program for a minimum of 10 years immediately prior to retirement. Said average amount shall be reduced at the rate of 15% per year to a minimum of 25% of said average amount, and the maximum amount of insurance in force on a retired member after attaining age 70 shall be 25% of the average amount of insurance in force for the last 3 years prior to retirement.
>
> . . . . .
>
> The mandatory 10 years of coverage immediately prior to retirement clause shall not apply to any Justice of the Supreme Judicial

Court or Superior Court, or to any Judge of the District Court or Administrative Court nor to any retired justice or judge who was insured and who is living on July 3, 1973. The reduction on retirement at the rate of 15% per year of the average amount of insurance for the last 3 years prior to retirement shall not apply to any Justice of the Supreme Judicial Court or Superior Court, or to any Judge of the District Court or Administrative Court nor to any retired justice or judge who was insured and who is living on the effective date of this enactment. The aforesaid average amount of insurance for any justice or judge shall be continued in force at no cost to the justice or judge until the age of 70. At the age of 70, the amount of insurance in force will become 25% of the average amount of insurance.

**10.** As applied specifically to members of the judiciary in section 1151, neither "active service" nor "retirement" is defined. The definition of "retirement" in 5 M.R.S.A. § 1001(20) as "termination of membership [in the state retirement system]" does not apply to members of the judiciary, who are excluded from membership in the retirement system by 5 M.R.S.A. § 1001(10), (12). "Active service" is nowhere defined in title 5.

in 1955,[11] was first made available to the judiciary on April 26, 1968, the effective date of P.L. 1967, ch. 544. Four of the next six legislatures amended and reenacted certain provisions of subsections 2(A) and 9(A) of section 1151 at issue in this case.[12] Nothing in the legislative debates or documents relating to the original enactment or later amendments is helpful in resolving the question here at issue: namely, whether for purposes of the state group life insurance law, active retired judges are to be treated as if they were not in retirement.

It is true that an active retired judge resembles his fully active, non-retired colleagues in important respects. By statute he constitutes a part of the court from which he has retired. The method of his appointment and the duration of his term of office are similar to those of his fully active colleagues. 4 M.R.S.A. § 6 (1979) (Supreme Judicial Court); § 104 (Superior Court); § 157–B (Supp.1980–81) (District Court). An active retired justice of the Supreme Judicial Court or Superior Court may hold court and act only in such cases and matters as are assigned to him by the Chief Justice of the Supreme Judicial Court, 4 M.R.S.A. §§ 6, 104, and an active retired judge of the District Court is similarly subject to assignment by the Chief Judge of the District Court. 4 M.R.S.A. § 157–B.[13] Retired judges who accept appointment by the Governor to be active retired judges thus take on substantial responsibilities, and over the years they have rendered—and are now rendering—valuable service in the judicial system of the state.

Although many active retired judges, including the plaintiffs in this litigation, are in fact active in the performance of their assigned duties, the issue in the present litigation is whether, under existing legislation, they may be lawfully treated by the board in the same way as non-retired judges for purposes of the board's life insurance program. In examining the issue to determine the controlling legislative purposes, we cannot disregard the fact that, except in the rare case of retirement for disability, retired judges—including active retired judges—are necessarily of an advanced age. Unlike other state employees and teachers, judges may not be pensioned before they are at least 65 years old regardless of the duration of their official service.[14] As a result, to grant plaintiffs' request would surely have some financial impact on the Group Life Insurance Fund supervised by the board under 5 M.R.S.A. § 1151(7), and hence on the program of life insurance benefits for all eligible state employees, teachers, and participating district employees as well as judges.

As in group life insurance programs generally, the insurance company establishes the rates for insuring state employees partly on the basis that, because retirement is normally to be expected, the insured group will contain few persons of advanced age. Because the insured group contains relatively few members over 65 years old and because the policy benefits are modest, uncomplicated and easily administered, the insurance can be made at a favorable premium rate requiring relatively small periodic contributions by the covered employees.

11. The state group life insurance program was created by P.L. 1955, ch. 451. As first enacted the program covered only "eligible" teachers and state employees, who were defined to exclude members of the judiciary, R.S. 1954, ch. 63–A, § 1 (Cum.Supp.1963). "Eligible" teachers and state employees were those who were eligible for membership in the Maine State Retirement System.

12. Among the amendments and reenactments of pertinent parts of subsections 2(A) and 9(A) of 5 M.R.S.A. § 1151 have been: P.L. 1971, ch. 589; P.L. 1973, chs. 584, 625, 788; P.L. 1977,

ch. 694, § 25, ch. 696, § 41–A; P.L. 1979, ch. 437.

13. The Chief Justice of the Supreme Judicial Court is also authorized to assign an active retired justice of that court (as well as an active retired judge of the District Court) "to sit in the Superior Court in any county" with "authority and jurisdiction therein as if he were a regular Justice of the Superior Court." 4 M.R.S.A. §§ 6–A, 157–C (Supp. 1980–81).

14. See 4 M.R.S.A. §§ 5, 157–A (1979).

From the employee's point of view, the chief disadvantage of group life insurance is that when he leaves the employment his group insurance protection ends—unless the overall program contains special arrangements for his benefit. In the Maine system, an employee about to retire may make direct application to the insurance company, without evidence of insurability, for an individual life insurance policy. However, the premium for such an individual policy is set at the employee's then-attained age and according to the appropriate class of risk. *See* 5 M.R.S.A. § 1151(9), 1st sentence; *Maine State Group Insurance Plan for State Employees and Teachers* 10 (undated booklet distributed by the Maine State Retirement System to eligible state employees on their entry into state service).

A second special arrangement for retired employees in the Maine system is the arrangement by which the board, under conditions set forth in section 1151, pays premiums to continue *basic* insurance (in reduced amounts) for employees after retirement. The premiums so paid by the board to the insurer for retired employees are set, not at the relatively low rate paid for coverage of eligible non-retired employees, but at age-graded rates reflecting the expected higher mortality of older persons. The board pays those premiums for retirees partly out of its reserves and partly out of appropriated funds earmarked for the purpose. *See* note 3 *supra.*

To treat active retired judges as if they were non-retired and fully active would tend to create one of the following effects: either the insurer would eventually increase the group-rate premium for all eligible employees and teachers to accommodate the systematic addition of a subgroup of elderly persons to the non-retired group, or the

board would have to supplement the active retired judges' contributions to the premium for active employees' group insurance by an amount representing the difference between the group rate and the age-graded rates applicable to persons of the judges' age.[15] In the latter alternative, the required subsidy would have to defray not only the increased cost of active retired judges' basic insurance (which is presently held to 25 percent of maximum after age 70), but also the cost of their supplemental coverage which retirees are not now permitted to have. The hidden subsidy thereby entailed would be reflected in an increased reserve for retirees' premiums and an increased appropriation for the same purpose. See Maine State Retirement System, *Report for the Fiscal Year Ended June 30, 1980,* 11–12, 105–06. Aside from the fact that the financial impact of such subsidies could be substantial, it seems unlikely, without more explicit provision in section 1151, that the legislature would have intended the board to depart so far from a fundamental mandate to make available to state employees relatively cheap life insurance by limiting the insured group to persons who are generally below the age of retirement.[16] If plaintiffs had their way, the active retired judges would be the only identifiable class of employees who have retired to enjoy such a subsidy.

The legislature has shown its awareness in the recent past of the special problems of retired judges with respect to life insurance. Eligible teachers and state employees other than judges are required by 5 M.R.S.A. § 1151(9)(A) to have participated in the group life insurance program for a minimum of ten years before retirement in order to have the privilege of continuing their basic insurance in force (at decreasing

---

**15.** It appears that the board's authority thus to supplement those contributions would have to be derived from its authority under subsection 7 of 5 M.R.S.A. § 1151 to use money in the Group Life Insurance Fund to pay the premiums of retirees.

**16.** It is true that a few persons of advanced age may be now covered by the group plan. Thus, an otherwise eligible non-retired employee is now entitled to the full maximum coverage amount even after he reaches 70. Maine State

Retirement System, *Explanation of State Group Life Insurance* 5 (a brochure issued in 1978). However, the possible continuing participation in the regular group life plan of a few older non-retired insureds on a casual basis has a minimal effect on the total quantum of risk and does not justify concluding that the legislature contemplated systematically introducing a bloc of older, already retired persons into the insured group.

amounts) after retirement. Since a judge is entitled under 4 M.R.S.A. § 103 to judicial retirement benefits if he retires at age 70 after serving less than ten years, a requirement of ten years' participation in the group insurance program would leave such a judge without the right to any insurance coverage on retirement. To meet that situation, the legislature amended section 1151(9)(A) in 1973 to make the requirement of ten years of coverage inapplicable to judges, including living retired judges who had once been insured under the program.[17] Again, in 1979, the legislature further amended 5 M.R.S.A. § 1151(9)(A) to make inapplicable to retired judges the provisions for an annual 15 percent reduction in the amount of insurance coverage during the period between the date of retirement and attainment of age 70.[18]

It is true that both those amendments had an indirect effect of increasing slightly the subsidy necessary for payment of premiums of retired judges. However, the increase is minor compared to the increase that would be caused by permitting active retired judges—especially those over 70 years of age—to have both basic and supplemental coverage at the group rate in the amounts permitted for fully active, nonretired state employees, teachers and judges.

The legislature has shown that it is capable of responding to the insurance needs of retired judges by enactments carefully fashioned to avoid impairing seriously the integrity of the group life insurance program. To uphold the plaintiffs' claim we should have to disregard two salient features of the existing system: First, there is no other group of retirees whose basic coverage after age 70 is not limited to 25 percent of the average amount of insurance in force for the last three years before retirement; second, no supplemental insurance is available under section 1151 to any other group of retirees.

Plaintiffs ask us to find that the language of section 1151(2)(A)[19] "only during

the active service of ... the Justices ... or Judges," implies a mandate that active retired judges are to be treated, for the purpose here in question, as if they had never retired. The clearly discernible purpose of the language in question is to provide simply that cessation of active service for any reason, including retirement, terminates any right to supplemental coverage. It would be a strained construction of that language to treat it as having the affirmative effect of changing the judge's status from one of retirement into one of nonretirement for the purpose of access to group life insurance benefits. The language in question will not bear such a strained construction when it is considered in the light of the structure and purpose of the state's group life insurance program, particularly when the legislature has been highly responsive in the recent past to the concerns of judges about their group insurance benefits.

The entry is:

Judgment affirmed.

All concurring.

---

17. 1973 P.L., ch. 584. See next-to-last paragraph of 5 M.R.S.A. § 1151(9)(A), quoted supra n. 9.

18. 1979 P.L., ch. 437, § 8. See last paragraph of 5 M.R.S.A. § 1151(9)(A), quoted supra n. 9.

